May it please the Court, Sean McClelland on behalf of Appellant Eduardo Alvarez. If I could, I'd like to save three minutes for rebuttal, and I'll watch my time. The stop here was unconstitutional at its inception, but even if it wasn't, it was unlawfully prolonged. So I'll start first with the initial stop question, and then I'll turn to prolongation as an alternative basis for reversal. As to the initial stop question, the facts presented to Deputy Carl at the time that he pulled into the parking lot and initiated the stop fall squarely under Corona, Wingate, and C, and fail to establish reasonable suspicion. At bottom, what Deputy Carl had when he stopped Mr. Alvarez and Ms. Kalin was essentially just three facts, that it was at night near a closed school, that the parking lot that Mr. Alvarez and Ms. Kalin were in was partially lit by artificial lighting, and that the cabin light of the car near Mr. Alvarez and Ms. Kalin had its cabin light on. So is your position that it was a stop as soon as he pulled into the parking lot? It was a stop as soon as he pulled into the parking lot with takedown lights on and began asking questions, Your Honor. And that's what the district court found. So then he was constitutional as he walked up to them, but as soon as he asked a question, it was unconstitutional? Well, so there was no walking here, Your Honor. He pulled into the parking lot in his vehicle. Getting out of the car. And he's asking questions as he steps out of the car. So the district court found, as a matter of fact, that the stop began at that point,  the government's concessions at page 184 of the excerpt of the record, and the district court's fact-finding on the subject is at page 20 of the excerpt of the record. So the stop began the minute he steps out of the vehicle, takedown lights blazing, and begins asking questions. So he needs reasonable suspicion prior to that point. And prior to that point, all he really has is that there are two individuals near a car with the cabin light on in a partially lit parking lot near a closed facility. And the proximity to the closed facility is insufficient under the Fourth Circuit's decision in Wingate and C, similarly under this Court's decision in Corona. Ditto for the partially lit parking lot. And then the cabin light point is really just cabin lights are on at cars at night sometimes. There's nothing that suggests criminal activity, and certainly not in any particularized way, about the initial stop. Could you pull the microphone a little closer? I think I may have cut out. I apologize, Your Honor. Is this better? I think it was mechanical on our part. Perfect. So that's the initial stop analysis, Your Honor. There's really no reasonable suspicion prior to the point that Deputy Carl limits exit from the parking lot and begins asking questions. With respect to prolongation as an alternative basis for reversal here, Your Honor, ultimately, really every additional step during the course of the investigation, even if the initial stop is permissible, does not yield additional reasonable suspicion towards Mr. Alvarez, and indeed tends to dissipate reasonable suspicion as to Mr. Alvarez. So we think that the cleanest line on this prolongation issue is the minute that Deputy Carl begins running the warrants check. At that point, he's deviated from the mission of the purported vehicle burglary stop and has started investigating some unspecified other set of crimes. Counsel, why doesn't the Supreme Court's decision in Streiff sort of undermine some of your argument? I mean, in that case, the Supreme Court said that they were, I guess, assumed without deciding that there was an unlawful investigatory stop. But at some point along that stop, the officers discover a warrant. That happened here. And the Supreme Court in that case said that the discovery of the warrant cured or attenuated any unlawful stop that occurred. So why doesn't that control here? Well, so it doesn't control here for a couple of reasons. Most significantly, the warrant only came back as to Ms. Kalin, not as to Mr. Alvarez. So the warrant check comes back clear as to Mr. Alvarez. And even if somehow there's reflective reasonable suspicion off of her, there are at least six additional points that we could draw a line in the sand where the stop should have ceased. So even if we somehow— But how do you distinguish the Alvarez from Kalin? That is, if he can stop her and, as we pass through this, search the car, the gun's going to be there, he's going to get the gun. I mean, Alvarez never asked to leave, but it wouldn't matter anyway. If he had walked away, they would have still found the gun, right? So I think this Court's decision in Landeros and the Fifth Circuit's decision in Hill are instructive on this point. Namely, Deputy Carl may well have had reasonable suspicion as to Ms. Kalin by, for instance, the warrant check or the subsequent drug investigation into her particularly. But there's really no point at which that reasonable suspicion is reflected off onto Mr. Alvarez. And, indeed, it's dissipated at at least six different points. Well, I guess I'm struggling with what do we need reasonable suspicion for once the warrant is in play? So we have a warrant. The officer does a verification to make sure that this warrant is actually for this woman, who he's interacting with through dispatch. That comes back that it's the right person. All of the demographics are matching. They're going to do a search—well, I think he inventoried the car. There's also an argument about whether he had probable cause to search the car for drugs because at that point in time he's got indication that they're drug paraphernalia. She's already made statements about the presence of drug paraphernalia and perhaps substances. So I'm coming back to once the warrant is discovered, what is— I also don't see that you're separately challenging the search. It seems like your main argument is challenging the stop, which is why I keep coming back to Streiff and saying, how do you get there with that case? Well, so a couple of points, Your Honor. One is that the search here was not an inventory search. The government presents some argument in district court briefing that there could have eventually been an inventory search. Well, I read the suppression hearing transcript all the way through, and the officer testified that at the end of that process they inventoried the car. Correct, Your Honor. Pursuant to a probable cause search is my understanding of their justification for the stop there. If it was an inventory search, it wouldn't have complied with local police policy. They need to tow it away and conduct a more formalized inventory process. Did you make those challenges? Your Honor, I'm not sure if we did below, but the government doesn't argue that there was a proper inventory search here on appeal or anything to that effect. And so as a consequence, I think they'd waive any argument with respect to that point. But more broadly, Your Honor, with respect to the warrant coming back as to Ms. Kalin, again, this is sort of Landero's Hill world where there's maybe additional reasonable suspicion as to her. And we'll recognize that it ends up getting quite bad for her. They end up finding drugs in her backpack, et cetera. But none of that reflects off to Mr. Alvarez. So the warrant comes back for him negative, no warrant. Let me ask you quickly. You stated it as though the officer had specifically asked for warrants. The way I remembered it was he's asking about the plate and the people and the dispatch just tells him about the warrant. Is that right? Well, sir, he runs what's described, I think, in the district court opinion, as a warrant check at about GX 5A 456. I think that may have been part of a search. Like about six minutes into the search? Six minutes into the event. He gets the warrant check return about six or seven minutes in. That's correct, Your Honor. Do you think he affirmatively asked for a warrant? It appears as though he's running sort of, as the government is now arguing on appeal, standard traffic stop records checks, which I take to include in this case a warrant check. All right. We can look at it. And it comes back returned negative, to be clear, as to Mr. Alvarez. Mr. Alvarez is asked about 13 and a half minutes into the stop if he had drugs. He says no. He's asked to turn out his pockets about 13 minutes 45 seconds into the stop. He turns them out. No drugs. He's asked if he's shooting up at about 14 minutes 15 seconds into the stop. He says no. He's checked for track marks about 16 minutes 45 seconds into the stop. No track marks. And then finally he's patted down about 25 minutes into the stop. We're now into GX 5B. And there's no drugs on him. So every investigative step that's taken as to Mr. Alvarez comes up negative. And that really, again, puts us into Landero's Hill world where there's one individual that maybe there's reasonable suspicion about, but there's no reasonable suspicion and, indeed, dissipated reasonable suspicion as to the other individual. So here Ms. Kalin gets implicated. Mr. Alvarez gets essentially exonerated by every investigative step. Can I reserve any time for rebuttal? I believe I'm reserving three minutes for rebuttal, Your Honor. But that's your total time, so you're down to less than a minute. Well, then I would like to reserve the remainder of my time. Thank you, Your Honor. We'll hear from the government. And just before, are you noticing the camera seems to be? Thank you. Good morning. May it please the Court. Jean Ripley for the United States. I'd like to turn first to the initial stop and kind of where my friend on the other side, where his arguments falter. You see, at the initial, there is a lack of appreciation here for the fact that this was not just a car at night, this was not just a car in an area of relative darkness, and this was not just a car with a cabin light off. This is a car in an area near a school, in a dirt parking lot adjacent to a school. And the district court here properly gave that deference, and the officers experienced that this is an unusual activity deference here. At 1 ER 23 and 24, the district court acknowledged the school is not just any public place at that time of night. As a school, people are not often there late at night unless they are up to no good. So you're arguing about whether there was reasonable suspicion to justify this stop? Yes, Your Honor. And I'm going to sort of bring up the issue that I was exploring with your adversary, and that is, in light of the Streiff case, do we even have to wrestle with whether there was reasonable suspicion for the stop at the outset? I think there certainly — this Court could certainly find that given the presence of a warrant, given that what subsequently followed, that there was no lawful person who could drive that car away, that this evidence would have been found regardless, and that the officer was entitled to find that warrant. And once he did find that warrant, it was reasonable in executing that warrant and even laudable, Your Honor. So if that's right, and the way I read Streiff, I don't see how we get around that idea because they specifically said, we assume that there's a bad stop, but the officer, through that interaction, discovers an active warrant, and that attenuates the bad stop. So what I'm struggling with is, okay, so then we've got the warrant. Now what? And how do we get from the warrant to the search of this car? Because in Streiff, it was a search incident to arrest. That doesn't work here because she wasn't in the car. So I don't think they get to search the car incident to arresting her. So what is your justification for the search? And also, relatedly, did the defendant challenge the search separately from the stop? Your Honor, I think here the critical point is that probable cause to execute the search is not before this Court. The appellant has not raised it on appeal. He has not challenged it, nor does the appellant have a standing. It was not his car. So in terms of the actual probable cause to execute the search, that was not an issue raised. Okay, well, why don't you address the question of whether there was probable cause, assuming it's raised. And then in terms of there being probable cause, I do think the District Court correctly found that there was probable cause, given the evidence that unfolded during the stop itself. Here we do have someone with an active warrant in her companion. The record readily demonstrates that evidence of increasingly suspicious behavior, evidence of evasiveness, evidence that the appellant increasingly distributed behavior of being under the influence, and then ultimately unfolds to discovery of drug pill familiarity, Your Honor. So what do we have except for the clanking of the pipe? We have their behavior. I mean, basically you're saying nervousness and all that, and we've discounted that as a basis for arrest, and there was no arrest at this point. So how do we get probable cause for the search? In terms of probable cause for the search, if we go back to the initial, in terms of the initial suspicious conduct that the officer observed, we have the car at night, the cabin light, the initial suspicious conduct they demonstrated, the fact that they continuously acted inconsistent with law-abiding citizens, including by going into the vehicle when an officer approached, including by ---- What's your best case that says that that's probable cause? In terms of at the point where this ---- I mean, nervousness, rapid speaking, isn't probable cause. I'm not sure I've seen a case where someone goes into the trunk and actually opens up constitutes probable cause. So ---- Your Honor, by the time they searched her purse, she had already admitted that she was in possession of a pipe. So I do think that that does also need to be taken into consideration, Your Honor. And when she makes that admission, had the warrant been confirmed at that ---- like, where does that fall in the timeline with regard to confirming the warrant? If I remember the record correctly, Your Honor, at that time the warrant had come back, and then they were waiting to confirm the extraditability of the warrant. So he had been taking steps to confirm her identification to make sure he did not arrest the wrong person, which is in the record. She was retrieving her ID, and in the process of her retrieving her ID, that's when he heard the clink, Your Honor. It was immediately after that, again, while the warrant was waiting for the dispatch to return the extraditability of the warrant, that he questioned her. She admitted to being in possession of the paraphernalia, and then he did a search of the purse. At the point in which the warrant came back extraditable, he had already found the paraphernalia and heroin in her bag. Did they ever arrest her on the warrant, or did they just arrest her on drug charges? I'm not sure we can distinguish the two. I do believe the record demonstrates it came back extraditable. So getting back to the initial stop, what crime did the officer suspect that they were committing? As demonstrated in his report, he did suspect burglary, and as testified at the— What he said at the hearing was he was concerned. It might be vandalism. It might be a burglary. It might be drug use. He didn't know. And in contrast with many of our cases where we emphasize that it occurred in a high-crime area, this is a low-crime area. I mean, this is not a— It's at a school at night, and it may be unusual, but that's not enough under corona in our other cases. I do respectfully submit it is enough in terms of, you know, we have an issue like— If you go back to Terry itself, we have someone engaging in suspicious conduct in not necessarily a suspicious location. Here, being present at a school isn't necessarily suspicious. Perhaps even being present at a school at night isn't necessarily suspicious, but given all of the compounding factors we have here, it does turn it into reasonably suspicious. Right, but you have to have reasonable suspicion of crime, and he gives three concerns that he says, and none of those turned out to be true, correct? I do submit, Your Honor, that it's not necessary to— Correct, but, you know, our case law says you can't act on hunches. That's not reasonable suspicion, and it looks to me as though the initial stop is just a hunch on his part. He observes what appears to be an unusual activity, but instead of going out and saying, move along, he makes an investigatory stop, a seizure, according to the district court. Your Honor, I do submit that it is more than a hunch because, again, it's not a case where we have someone—I do think the location matters. It was near a school. It is at 338— Right, there was no burglary. There was no vandalism, and there was drug paraphernalia, but no observed drug use, correct? I do— Those three concerns. Yes, but this court has, I think, repeatedly upheld that the initial suspicion of the officer does not need to be the ultimate crime that is unfolded to uphold reasonable suspicion. Now, in this case, he did offer different areas of suspicion, burglary based on the cabin light, drug use, and other activities. But the only time he'd see anybody around the school was juveniles, right? Correct. So it's not high-crime areas we've had in other cases? It's not. And, Your Honor, I do respectfully submit that that actually bolsters the reasonable suspicion here. This is an officer who has paroled this area time and time again. Right. I don't quarrel that he had the ability to go in there, but when he blocked their way and then, as the district court found, he seized them, that takes more than just asking for identification because he didn't have any articulable suspicion at that point. He just said, This is unusual. It could be something bad. I do think, in terms of here, in terms of— How does that differ from Corona? Your Honor, I believe, based on the compounding factors, it is an objective standard, and certainly in terms of—this is not a case where it's just unusual, given all of the compounding factors, where it's just unusual activity. At the fundamental reasonable suspicion— You know, it's not uncommon in my neck of the woods for people to go to high school tracks and exercise and park there. It's just not. That's why I struck with this thing. Okay, well, it's 3.30. That's a little unusual. But then they said, Well, they just got off shift. Well, my apologies, Your Honor. Go ahead. My apologies. This is here, Your Honor, where I do think the district court properly credited the officer's training and experience, based on his experience of patrolling this area for the year and a half prior, based on his experience of the neighborhood. As Your Honor just mentioned, it may not be unusual for individuals to go to a track, but it, at least in Your Honor's experience, may be unusual for them to do it at 3.30 at night. I think given all of the other factors here, it does render, if not from the broad every law-abiding citizen standard, it renders it to this is something that covers potentially suspicious conduct. Thank you, Your Honor. Any further questions from the court? No. Thank you for your argument, counsel. All right, we had some active questioning for you, so we'll give you a minute and a half. Thank you, Your Honor. Just a couple of points in rebuttal. I would like to first address the streaf point. I'll just say the government cites streaf just once in its briefing, and that's quoting the district court. The only appearance of streaf is at AB 33. But, of course, we have to apply it because it's Supreme Court law. Totally understood, Your Honor, but I'm just flagging that. Why would you distinguish it? Well, so streaf, I think going back to Judge Forrest's question of opposing counsel, really doesn't get the government past the initial stop. The deputy needs reasonable suspicion to justify the initial stop, regardless of what comes after. And if that weren't the law, then any subsequent warrant would necessarily bless otherwise unconstitutional stops, and that's just not exactly where streaf gets us. Beyond that, there was a question about opening the trunk and whether that establishes reasonable suspicion from Judge Thomas. And the answer to that is no. This court's case in Job indicates that opening sort of containers in Job, it was a garage, and that was insufficient to establish reasonable suspicion. And then finally, as a factual point, or one additional point on the factual point, they don't, Deputy Carl doesn't end up arresting Ms. Kalin on the warrant. He ends up arresting her on the drug paraphernalia. Just quickly, some talk about him blocking her in. I thought they were like 30 feet away. What's your take on that evidence? So I don't think there's any dispute. Well, one, there's no dispute that there was a stop from the jump, at least with respect to the government's concession below. But also, given that the parking lot really only had limited exits, where Deputy Carl blocked did limit the vehicle's ability to exit the parking lot. But it wasn't like he pulled up behind him and blocked them in in the usual term. I mean, it's not directly, you know, a foot behind the vehicle, but it does block exit from the parking lot, and we cite in our reply brief a number of cases that support this being a stop. And then finally, with respect to the unusualness of being out late at night to exercise at tracks, even the district court identified during the suppression hearing that the district court can relate to using a public track late at night for running purposes, and that's at Excerpt of Record 178. If there's nothing further, we'd ask that the court reverse. Thank you. All right. I thank counsel for the argument in the case of United States v. Alvarez. That matter will be submitted. And we'll move to our second argument this morning,
judges: Boggs, THOMAS, FORREST